**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| GREGORY JOHN SCHAFFER<br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA<br>Respondent. | : | Crim. No. 2:13-CR-00183<br>Hon. Kevin McNulty, U.S.D.J. |

**BRIEF IN SUPPORT OF MOTION TO VACATE, SET ASIDE OR CORRECT A SENTENCE, PURSUANT TO 28 U.S.C. §2255**

Petitioner Gregory John Schaffer, through undersigned counsel, respectfully moves this Court pursuant to 28 U.S.C. §2255 to vacate, set aside or correct his sentence. Petitioner is in federal custody at Tucson U.S.P. in Tucson, Arizona. On June 5, 2018, this Court sentenced Petitioner to 480 months' imprisonment. Petitioner appealed his conviction to the Court of Appeals for the Third Circuit, and his appeal was denied on March 12, 2019. No petition for certiorari was filed and this is Defendant's first §2255 motion. Petitioner's §2255 motion is timely in that the Court granted several requests for an extension of time to file the motion. Petitioner respectfully requests that the Court grant this Motion to Vacate, Set Aside, or Correct its Sentence, or in the alternative, that the Court conduct an evidentiary hearing.

**BACKGROUND**

Petitioner Gregory John Schaffer was charged in a criminal indictment in the District of New Jersey with the two counts of production of child pornography against Minor Victim 1, contrary to 18 U.S.C. 2251(A) and section 2; 2) production of child pornography against Minor

Victim 2, contrary to 18 U.S.C. 2251(A) and section 2; and 3) possession of child pornography contrary to 18 U.S.C. 2252A9A)(5)(B) and 2. The first two charges resulted from incidents that occurred between January 2007 through December 2010, involving two underage females, and the third charge pertained to the seizure of the laptop and external hard drive.

The Government obtained Petitioner's Acer Laptop Computer ("Acer Laptop") on June 3, 2012, during the course of its investigation of a separate allegation of sexual assault by a teenage girl from New York (the "New York case"). (ECF 62 at 2). Approximately two months later, on July 31, 2012, the Government obtained a warrant to search Petitioner's emails, cell phone and the Acer Laptop. (*Id.*). Prior to searching the laptop, the Government made "an exact forensic image of the Acer laptop's hard drive." (*Id.*). Upon searching the laptop, the Government discovered five videos which depicted Petitioner allegedly abusing the two minor victims in this matter. (*Id.*). At the time of Petitioner's arrest on June 3, 2012 for the incident in New York, the Government also seized an external hard drive ("Gigaware Hard Drive"), which the Government alleged was used by Respondent to back up the Acer Laptop. (ECF 1 at 5-6; ECF 69 at 2).

On July 30, 2012, Secret Service agent John Simonelli, a digital forensics expert, received the Acer laptop and Gigaware hard drive for examination. He testified that, after receiving the search warrant, he first made "exact copies" of the two devices and subsequently examined the data on the copies. Simonelli indicated that the two devices were stored in his secure laboratory. He also created a "virtual machine" to access the exact copy of the laptop and discovered that the user name for the laptop was "Greg." Simonelli believed that Schaffer might be a possible "user" and that a Verizon bill for internet use was sent to Schaffer. Simonelli discovered videos of child pornography on the copy of the laptop including pornographic images

of Schaffer and the two victims, which were ultimiately played for the jury. (10/18/2017 Trial Tr. 100-160; 10/19/2017 Trial Tr. 16-3 to 66-20). Thereafter, Robert Mancene, an agent with Homeland Security Investigations (HIS), transported the Acer laptop to agent headquarters for the Eastern District of New York where the laptop was secured as evidence for the Schaffer's trial in the New York case. Mancene went to retrieve the laptop in January of 2017, prior to Schaffer's trial in this matter, but the laptop was inexplicably missing. Mancene told the jury that he was very upset about the situation and despite efforts by him and another agent, the laptop could not be found anywhere. Other devices seized from Schaffer, however, were still secure. (10/19/2017 Trial Tr. 129-14 to 131-14).

Prior to trial, Petitioner moved to suppress the forensic image of the Acer Laptop and the Gigaware Hard Drive, arguing they were improperly searched before the Government obtained a warrant, in violation of the Fourth Amendment. (ECF 59 and 64). Petitioner argued that the search warrant affidavit referenced photographs that appeared "inside" Petitioner's Acer Laptop, and thus an illegal search must have occured. (ECF 59 at 12-13). The Government maintained that when officers arrested Petitioner in relation to the New York case, the photographs and other items used in support of the search warrant were in plain view and were incriminating based on the allegations in the New York case. (ECF 62 at 13). Petitioner countered that the photograph was not in plain view because it was not listed on the evidence sheet and did not appear in photographs from the crime scene. (ECF 59 at 7). The Government relied on a subsequent affidavit wherein the law enforcement agents stated that the Government recovered "computer-printed photographs of teenage-appearing girls wearing bathing suits or naked" from the crime scene. (ECF 35-2 at GS00029 ¶9).

Petitioner also argued in his pre-trial motions and reply briefs that there were numerous irregularities with the search and seizure of the Acer Laptop and Gigaware Hard Drive. Most glaring was Schaffer's argument that the forensic image of the hard drive of the Acer Laptop was not actually an image of the hard drive on the day of his arrest, but was of another device in a different condition. (ECF 59 at 8). As revealed in the Government's photographs, the hard drive was manufactured on May 22, 2011 and the Acer Laptop was manufactured on July 9, 2011. However, another image shows a separate partition (the "D Partition"), which was created on May 10, 2011, which predates the production of the hard drive, suggesting that the forensically imaged hard drive must be a copy of a copy. (ECF 69, pgs. 3-15; ECF 75, pgs. 2-13; ECF 75-1, pgs. 1-3).

On October 12, 2017, the Court denied Schaffer's motion to suppress the Acer laptop computer and Gigaware hard drive, without affording Schaffer an opportunity to question the officers regarding the lost laptop. (ECF 76). On October 20, 2017, the Court denied Schaffer's motion for a judgment of acquittal, pursuant to Rule 29 of the Federal Rules of Criminal Procedure as it pertained to the two charges of production of child pornography. (EFC 83). On October 20, 2017, a jury found Schaffer guilty on all counts.

**LEGAL ARGUMENT**

28 U.S.C. 2255 entitles Petitioner to relief only if his custody or sentence violates federal law or the Constitution. The statue provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. §2255(a). A district court has discretion in determining whether to hold an evidentiary hearing on a habeas petition under Section 2255(b). *See Gov't of the V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). In exercising this discretion, the court must first determine whether the Petitioner's claims, if proven, would entitle him to relief, and then consider whether an evidentiary hearing is needed to determine the truth of the allegations. *See Gov't of the V.I. v. Weatherwax*, 20 F.3d 572, 574 (3d Cir. 1994). Accordingly, a district court may summarily dismiss a motion brought under Section 2255 without a hearing where the "motion, files and records 'show conclusively that the movant is not entitled to relief.'" *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) (quoting *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).

At a minimum, Schaffer submits that an evidentiary hearing is warranted, as the record clearly indicates that, if his statements are taken as true, he is entitled to relief. Here, Schaffer's due process rights were violated when the Government lost the Acer Laptop, which was premised on bad faith on the part of the Government. The sentence also violated Schaffer's due process rights in that the evidence was insufficient for jury to convict him on Counts 1 and 2 for the production of child pornography. There was no evidence that Schaffer was responsible for the transfer of the images from the recording device, which was not seized by the Government, to the Acer Laptop or external hard drive. Rather, the jury's verdict was based on impermissible speculation.

## I. PETITIONER'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE GOVERNMENT LOST THE ACER LAPTOP, DENYING HIM ACCESS TO CRITICAL EVIDENCE AGAINST HIM.

Due process mandates that "criminal prosecutions must comport with prevailing notions of fundamental fairness." *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). "[T]his standard of fairness . . . require[s] that criminal defendants be afforded a

meaningful opportunity to present a complete defense." *Id*. This right is protected when the government "delivers exculpatory evidence into the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of our criminal justice system." *Id*. "Whenever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." *Id*. at 486.

In *California v. Trombetta*, the Supreme Court held that for destruction or loss of evidence to constitute a constitutional violation, "the evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489, 104 S.Ct. 2528. In *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), the Court further held that where lost or destroyed evidence is deemed to be only potentially exculpatory, as opposed to apparently exculpatory, the defendant must show that the evidence was destroyed in bad faith. *Id.* at 58, 109 S.Ct. 333. The *Youngblood* Court defined "potentially useful evidence" as evidence of which "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57.

Here, there is no question that the Government inexplicably lost the Acer Laptop, the contents of which were central to the Government's case against Schaffer. The production charges were based entirely on the transfer of child pornography onto the Acer Laptop (and backed up on the external hard drive), yet Schaffer was denied the ability to examine the actual laptop, including its metadata. Metadata is "electronically-stored evidence that describes the history, tracking, or management of an electronic document." *United States v. Baroni*, Case No.

2:15-cr-00193 (D.N.J. Dec. 16, 2015) (quoting *Aguilar v. Immigration & Customs Enf't Div.,* 255 F.R.D. 350, 354 (S.D.N.Y. 2008)) (defining "substantive metadata" as "modifications to a document, such as prior edits or editorial comments, and [codes]" and "system metadata" as "data concerning the author, date and time of creation, and the date a document was modified."). Schaffer's expert could have reviewed the metadata of the files at issue, including the creation date, the username of the original submitter, and other unique information, before the Government copied it to another device. This information was essential to Schaffer's defense, because, as discussed in Section II, *infra*, the Government was required to prove that it was actually Schaffer who transferred the images to the laptop. Because it is unknown if this information was altered when the Government copied it and there was no other means of cross examining the Government witnesses on this essential issue, Schaffer's due process rights were violated when the laptop was inexplicably lost.

This situation is akin to *United States v. Larhonda Dennison*, Mem. Op. Case No. 2:13CR805DAK (D.C. Utah Dec. 12, 2014), a healthcare fraud case, wherein the Government made copies of seized computers used in the operation of a clinic and left the original computers in the possession of the defendant. Prior to trial, the Government copies were corrupted and the defendant had disposed of the original computers, unaware that she had been implicated by a co-defendant. The Utah District Court found that the documents contained on the lost computer were necessary for impeachment of critical government witnesses, and if the lost computer evidence was available to the defense, there was a reasonable probability that it could impact witness credibility and ultimately change the outcome of the trial. In assessing whether the Government knew whether the computers were exculpatory, the court stated:

> Given the substantial loss of evidence - a business's entire day-to-day records and communications over the course of many years - the court finds it impossible to

> conclude that it was not apparent that there would be favorable or useful evidence to Defendant on the clinic's computers. The need for documentary support for Defendant's defense is obvious. This is not a case where one or two documents have been lost and Defendant needs to demonstrate how those documents would have been apparently favorable. The government's loss of evidence in this case has left Defendant with no documentary evidence at all.

*Id*. In dismissing the Indictment, the District Court held that the defendant did not need to establish bad faith by the Government because the evidence was exculpatory on its face in that it left the defendant with no documentary evidence to cross examine a critical witness. *Id*.

Similarly, here, the Acer Laptop was exculpatory on its face in that it contained metadata for the images at issue in the Indictment, which could be used to cross examine the Government's witnesses regarding the initial transfer to the laptop. This transfer is one of the elements of production of child pornography under 18 U.S.C. 2251(A), yet the loss of the laptop completely deprived Schaffer of the ability to challenge the Government's assertions. Like in *Dennison*, it should have been apparent to the Government that the original laptop was exculpatory on its face.

Even if the Acer Laptop is not deemed exculpatory on its face, under *Youngblood,* it was potentially exculpatory in that it could have been "subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57. The expansive list of irregularities detailed in Schaffer's motion in limine and reply briefs (ECF 69, 75) cumulatively establish bad faith by the Government. The irregularities in the examination of the laptop, as well as a cell phone seized from Schaffer, include: 1) evidence that the laptop hard drive was not the original hard drive since a "D partition" was created on May 11, 2011, prior to the manufacture of the hard drive, May 22, 2011; 2) incongruities in the logbook at agent headquarters in New York regarding evidence, including the laptop; 3) one hour inconsistency of a Sysprep time stamp and the creation of the D partition; 4) 47 unexplained calls made from Schaffer's cell phone to his

cell phone's voicemail while the phone was in Government custody and without any warrant; 5) the search warrant inventory after the seizure of Schaffer's computer omits any reference to child pornography or photographs; 6) inexplicable gaps in the chain of custody regarding both the laptop and the photos; 7) that the Government's on-scene "screen shots" of Schaffer's computer could not have been accomplished without the creation of a virtual machine, as certified by Schaffer's expert; and 8) irregularities regarding whether a password was required (ECF 69, pgs. 3-15; ECF 75, pgs. 2-13; 75-1, pgs. 1-3).

In the analogous case of *United States v. Lamont Vaughn*, Mem. Op. Case No. CR 14- 23 (JLL), 2015 WL 6948577, at *1 (D.N.J. Nov. 10, 2015), the court excluded all text messages where the government failed to preserve certain text messages between law enforcement officers and a cooperating witness. As in Schaffer's situation, the Government in *Vaughn* thoroughly reviewed the text messages before they were lost and there was at least evidence that the Government knew what was in the deleted messages. The Government's access to the evidence was exclusive, concerning dealings between Government agents and cooperators, a classic source of impeachment material. According to the court, the circumstances strongly suggested the conscious exercise of selection between the preserved and unpreserved messages. Here, exclusion was also the proper remedy in that the Government's access was exclusive and Agent Mancene admitted that the laptop was the only evidence inexplicably missing while other evidence seized from Schaffer was still secure. (10/19/2017 Trial Tr. 129-14 to 131-14)

Compounding the error, the District Court denied Schaffer's request for a hearing, during which he could have cross examined Government agents regarding the circumstances surrounding the disappearance of the computer to determine whether they acted in bad faith. He could have also confronted the agents as to the irregularities of the search and examination of the

laptop, which could have also helped to establish the Government's bad faith in losing the laptop. Given the critical nature of the evidence in establishing an element of the charge and the impossibility of ensuring that the metadata accurately transferred to the Government's copy, Schaffer's due process rights were violated by the Government's loss of the Acer Laptop.

## II. THE EVIDENCE ON COUNTS 1 AND 2 WAS INSUFFICIENT TO SUSTAIN THE JURY'S VERDICT OF GUILT IN VIOLATION OF THE DUE PROCESS CLAUSE.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime for with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction, if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). This Court must view the evidence in the light most favorable to the Government, and will uphold the jury's verdict if "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Voigt*, 89 F.3d 1050, 1080 (3d. Cir. 1996) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Schaffer was charged with two counts of production of child pornography, in violation of 18 U.S.C. §2251(A), under which the Government must prove that he:

1) employed, used, persuaded, induced, enticed or coerced the victims in Counts 1 and 2 to engage in sexually explicit conduct for the purposes of producing a visual depiction of that conduct;

2) that the victims were less than 18 years of age at the time; and

> 3) that either a) the defendant knew or had reason to know that such visual depiction would be mailed or transported across state lines or in foreign commerce; or (b) the visual depiction was produced or transmitted using materials that had been mailed, shipped, transported across state lines or in foreign commerce; or (c) the visual depiction was mailed or actually transported across state lines or in foreign commerce.

18 U.S.C. §2251(A). Here, there was insufficient evidence to satisfy the third element of the statute in violation of Schaffer's right to due process.

The Government did not offer evidence that Schaffer knew the depiction would be transported across state lines or that it was actually transported across state lines. Instead, the Government relied on the theory that the visual depictions were produced or transmitted using materials that had been mailed, shipped or transported across state lines or in foreign commerce. Because the camera/recording device used to create the images was never found, the Government argued that Schaffer was guilty because the depictions were found on the Acer Laptop, which was made in China, and the Gigaware hard drive, which was made in Thailand. (10/19/2017 Trial Tr. 79-13 to 92-15). However, the jury was presented with no evidence which would allow it to reasonably conclude that Schaffer was the person who transmitted the images to the Acer Laptop.

Where, as in this case, the Government relies entirely on circumstantial evidence "the inferences drawn must have a logical and convincing connection to the facts established." *United States v. Carr*, 25 F.3d 1194, 1201 (3d Cir. 1994) (quoting *United States v. Casper,* 956 F.2d 416, 422 (3d Cir.1992)). However, a "verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Rojas Alvarez,* 451 F.3d 320, 333 (5th Cir.2006) (alteration in original) (quoting *United States v. Pettigrew,* 77 F.3d 1500, 1521 (5th Cir. 1996)) (internal quotation marks omitted); *see also*

*United States v. D'Amato,* 39 F.3d 1249, 1256 (2d Cir.1994) ("A] conviction based on speculation and surmise alone cannot stand."). Here, the facts established by the Government do not logically connect to the inference drawn by the jury, which was instead the result of speculation and the piling of interferences. While Schaffer conceded that he took the images and even participated in the inappropriate encounters with the victims, there was no evidence that it was Schaffer who placed the images on these devices. In support of this inference, the Government, District Court and Third Circuit relied on the following facts:

> 1) the sexually explicit videos of the victims were found on the Acer Laptop;
>
> 2) The Acer Laptop contained copies of the sexually explicit video of Victim One;
>
> 3) The sexually explicit photograph of Victim Two was on the Acer Laptop;
>
> 4) The Gigaware Hard Drive contained the sexually explicit videos of the victims, along with the photograph of Victim Two; and
>
> 5) Special Agent John Simonello testified that the sexually explicit videos of the two victims, along with the photograph of Victim Two, were backed up from the Acer Laptop to the Gigaware Hard Drive in May 2012.

However, none of these facts support the inference that Schaffer was responsible for actually transferring the images to the Acer Laptop or Gigaware Hard Drive. The Government offered no evidence that Schaffer had exclusive control over the laptop, which was manufactured in 2011, two years after the recording of the images. HSI Agent Jeffrey Knopf conceded that the Government had no idea who had access to the laptop before it was seized. (10/18/2017 Trial Tr. 98- 11 to 99-1). In addition, there was no indication that the laptop was password protected.

In the similar case of *United States v. Lowe*, 795 F.3d 519 (6th Cir. 2015), the Sixth Circuit overturned defendant's conviction for various child-pornography offenses, holding that the evidence was insufficient to show that the defendant was the one who downloaded the child pornography. *Id.* at 523-24. The Court relied on the fact that the defendant "shared his home

with two other people, both of whom could access" the laptop and the peer-to-peer file-sharing program without entering passwords. *Id.* Although the jury could reasonably infer that the defendant owned and occasionally used the laptop, a reasonable juror could not infer that the defendant downloaded the images without improperly "stacking inferences." Significantly, no circumstantial evidence, such as the laptop's browser history, suggested that it was the defendant rather than the others who had used this laptop to download child pornography. *Id.* at 523-24.

In *United States v. Pothier*, 919 F.3d 143 (1st Cir. 2019), the First Circuit followed the Sixth's circuit rationale in *Lowe*, finding that there was insufficient evidence to prove that defendant had downloaded the child pornography at issue. Because the laptop was not password-protected and it was found in a common area of the residence, there were three people who potentially had access to it. Like in *Lowe*, despite the fact that there was no evidence that the other individuals ever accessed the laptop, the First Circuit found that the record was incomplete as to whether the defendant actually downloaded the images. Although the evidence generated "hunches," it provided "no tools for rationally confirming any one of the hunches beyond a reasonable doubt." *Id*. at 149. "Each scenario is plausible, and though one might debate their relative merits, to settle on one beyond reasonable doubt would require guesswork. And '[g]uilt beyond a reasonable doubt cannot be premised on pure conjecture.'" *Id*. at 147 (*quoting Stewart v. Coalter*, 48 F.3d 610, 615 (1st Cir. 1995)); *see also United States v. Moreland*, 665 F.3d 137, 150 (5th Cir. 2011) (holding that the government presented insufficient evidence of knowledge of possession of child pornography where the computer was shared and the images were saved in unallocated "slack space" as opposed to folders associated with a particular user); *United States v. Lively*, 852 F.3d 549 (6th Cir. 2017) (defendant who sexually

abused minor could not be found guilty of production based on third party's transfer of the images onto a hard-drive).

Here, the Government failed to establish that Schaffer had exclusive access to the device or provide any evidence establishing that he downloaded the images onto either the Acer Laptop or the Gigaware Hard Drive. This is further compounded by the issues with the search of the Acer Laptop, as discussed in Section I, *supra*, which call into question the integrity of the data extracted from the device and relied on at trial. This includes the metadata, which could have provided evidence about the creation date, the username of the original submitter, and other unique information.

## CONCLUSION

For the reasons set forth above, Petitioner Gregory John Schaffer respectfully requests that the Court grant this Motion to Vacate, Set Aside, or Correct its Sentence, or in the alternative, that the Court conduct an evidentiary hearing.

Respectfully submitted,

/s/ Michael N. Pedicini
Michael N. Pedicini
560 Main Street
Chatham, New Jersey 07928
Tel: 973-635-2555

Dated: June 21, 2021