# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GREGORY JOHN SCHAFFER, | : | |
| | : | Civil Action No. 21-12815 (KM) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |
| | : | |

**<u>KEVIN MCNULTY, U.S.D.J.</u>**

Petitioner Gregory John Schaffer, a federal prisoner at USC Tucson, in Tucson, Arizona, filed a counseled motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. DE 1, 24. He challenges his 2018 conviction for two counts of production of child pornography and one count of possession of child pornography. *See United States v. Schaffer*, Crim. DE 98 (judgment).[1] For the reasons below, the motion will be denied and a certificate of appealability will not issue.

## I.   BACKGROUND

### A.  Facts, Criminal Proceedings, and Direct Appeal

On direct appeal, the Third Circuit summarized the facts underlying Schaffer's conviction as follows: "Schaffer sexually abused two minor children in locations including his house, his office, and hotel rooms. He took pictures and appeared in videos of the assaults found on his laptop and external hard drive." *United States v. Schaffer*, 777 F. App'x 581, 582 (3d Cir. 2019).

---

[1]     The case was tried and sentenced by the Hon. Jose L. Linares. It was reassigned to me on May 31, 2019, after Judge Linares's retirement.
        Citations to "Crim. DE" are to the docket entries in Schaffer's criminal case, No. 13-183 (D.N.J.).

On March 13, 2013, a federal grand jury returned an indictment charging Schaffer with two counts of producing child pornography, in violation of 18 U.S.C. § 2251(a), and one count of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Crim. DE 1 (indictment).

Schaffer was tried before a jury in October 2017. Crim. DE 91–93 (trial transcripts). Before trial, the Government advised the Court that it could not locate Schaffer's laptop and requested a pretrial ruling that its loss of the laptop did not violate Schaffer's due process rights. Crim. DE 40. The Government's motion summarized the circumstances surrounding the lost laptop as follows:

> [T]he defendant was indicted by a federal grand jury in the Eastern District of New York ("EDNY") on July 2, 2012, just a few weeks after the search of defendant's business premises, on four counts arising from his sexual enticement across state lines and subsequent sexual assault of a minor from Brooklyn. In July 2014, that case proceeded to trial, resulting in the defendant's conviction on all four counts. The Acer laptop computer was introduced into evidence at the EDNY trial, as were several depictions of child pornography from [Secret Service Special Agent John] Simonello's forensic image—all without objection from the defendant.
>
> After the defendant's conviction, the physical evidence used at trial was brought back from the court to the U.S. Attorney's Office for the EDNY in Brooklyn, New York, where it was placed in an evidence room. The evidence remained there while Schaffer appealed his conviction to the Second Circuit. That appeal is pending.
>
> On or about January 23, 2017, the case agent from [Homeland Security Investigations ("HSI")], Robert Mancene, went to retrieve the physical evidence from the evidence room in EDNY for use at trial in the District of New Jersey, but he could not find the Acer laptop. The U.S. Attorney's Office for the EDNY and agents from HSI have diligently searched for it, including enlisting the aid of a criminal investigator from the EDNY, but they still have not found it. They are continuing to search for it.

Crim. DE 40 at 3 (footnote omitted); *see also id.*; DE 46-1–46-3 (declarations of HSI Special Agent, U.S. Secret Service Agent, and EDNY Assistant U.S. Attorney detailing the imaging, chain of custody, and subsequent efforts to locate the laptop).

The Honorable Jose L. Linares found that the loss of the laptop did not violate Schaffer's due process rights because (1) there was no indication that the laptop contained exculpatory information; (2) the evidence was not irreplaceable given that a forensic image of the internal drive was available and could be authenticated; and (3) the Government did not act in bad faith. Crim. DE 51 at 18. Judge Linares reserved decision regarding the admissibility of the forensic image of the laptop. *Id.* at 20.

Thereafter, Schaffer moved to suppress (1) images retrieved from the laptop and (2) the external hard drive. Crim. DE 76. In denying the motion, Judge Linares provided the following background regarding the forensic image of the laptop and the external hard drive:

> The Government became aware of Defendant's alleged misconduct during an investigation into allegations of sexual assault by a 15 year-old girl in Brooklyn, NY. (ECF No. 62 at 2). Defendant was arrested for the sexual assault on June 3, 2012. (*Id.*).
>
> During its investigation, the Government found, on Defendant's Acer Laptop Computer ("Acer Laptop"), photographs of "teenage-appearing girls wearing bathing suits or naked." (*Id.*). On July 31, 2012, the Government obtained a warrant to search Defendant's emails, cell phone, and the Acer Laptop computer. (*Id.*). Prior to searching the laptop, the Government made "an exact forensic image of the Acer laptop's hard drive." (*Id.*). During the search of the laptop, the Government found videos of the Brooklyn victim in a bathing suit, which also showed Defendant groping her. (*Id.*). The Government also found five videos which depict Defendant allegedly sexually abusing two minors from New Jersey. These videos are the basis for the three count indictment in this District. (*Id.* at 2-3). Moreover, the Government found approximately 100 other "depictions of child pornography." (ECF No. 1; ECF No 62 at 3).
>
> The Government also seized an external hard drive at the time of Defendant's arrest on June 3, 2012 (ECF No. 1 at 5-6 ("Gigaware Hard Drive")). According to the Government, the Gigaware Hard Drive was used by Defendant as a backup for the Acer Laptop. (ECF No. 69 at 2). Hence, the Government seeks to introduce the forensic image of the Acer Laptop, along with the Gigaware Hard Drive. (*Id.*). Defendant opposes the use of either item, asserting various arguments regarding the inadmissibility of same. (ECF Nos. 59, 64)

Crim. DE 76 at 1–2. Judge Linares rejected Schaffer's arguments regarding inadmissibility, finding, *inter alia*, that Schaffer did not establish that (1) the laptop was inappropriately searched

(*id.* at 4); (2) the forensic image was not actually an image of the hard drive of his laptop as it was at the time of his arrest (*id.* at 6–8); and (3) the hard drive was inappropriately searched (*id.* at 8).

At the conclusion of a three-day trial, Schaffer moved for a judgment of acquittal.[2] Crim. DE 83 at 1. Judge Linares, in denying the motion, summarized Schaffer's argument in support of acquittal and the Government's opposition as follows:

> Defendant's argument is straightforward. According to Defendant, none of the evidence in the record shows that Defendant himself placed the sexually explicit materials onto his Acer Laptop and/or the Gigaware External Hard Drive. Defendant concedes that he appears in the videos that were presented to the jury and th[at] he engaged in sexual conduct with minor females. He further concedes that the Government need not present evidence that he personally recorded the videos and took the subject illicit photographs. Rather, the crux of Defendant's argument is that there is no evidence to support the fact Defendant ever placed the illicit materials on his electronic devices or knew that said materials were even on same.
>
> . . .
>
> The Government's response is straightforward as well. According to the Government, the record contains sufficient evidence to lead a reasonable jury to conclude that Defendant did in fact create the videos and images, and then, thereafter, place same onto his Acer Laptop and/or Gigaware Hard Drive. Specifically, the Government points to the following evidence:
>
> 1. The sexually explicit videos of Allison and Ashley[3] that were found on the Acer Laptop
>
> 2. The Acer Laptop contained copies of the sexually explicit videos of Allison on the desktop
>
> 3. The sexually explicit photographs that Defendant took of Ashley were found on the Acer Laptop

---

[2] Federal Rule of Criminal Procedure 29(a) provides: "[T]he court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."

[3] The pseudonyms of Allison and Ashley were used throughout the proceedings to protect the identities of the minor victims. DE 43 at 2 (stipulation and order assigning pseudonyms).

4. The Gigaware Hard Drive also contained the sexually explicit videos of Allison and Ashley, along with the sexually explicit photographs of Ashley

5. Special Agent John Simonello testified that the sexually explicit videos of Allison and Ashley, along with the sexually explicit photographs of Ashley, among other files, were backed up from the Acer Laptop to the Gigaware Hard Drive in May 2012

Crim. DE 83 at 2–4.

Judge Linares rejected Schaffer's argument, finding that:

the Court's own review of the admitted evidence unequivocally shows Defendant appearing with the two victims and engaging in sexually illicit conduct. Specifically, Exhibits 403a, 403b, 403c, 403d, 405a, 405b, 405c, and 405d all support this conclusion. Therein, Defendant can be seen looking directly at the camera and adjusting same. This leads the Court, and, potentially, a reasonable jury, to conclude Defendant was aware that the camera was in the room and was adjusting it to capture the best angles of his interactions. On these videos, Defendant can also be heard speaking to the victim discussing a "modeling agency" and how the victim would be photographed. The conclusion is further corroborated Exhibits 107, 108, 109, 110, 111, 112, 113, 114, 115, and 116. These Exhibits depict the victim in the same bathing suit that she was wearing in the aforementioned videos and In various states of undress. Nearly identical facts are applicable to the other victim in this case.

The Court finds that, as argued by the Government, the Government presented ample evidence, both by way of testimony as well as document evidence, that these videos and images were present on Defendant's Acer Laptop at the time the Government searched same. Special Agent John Simonello testified to this fact. Additionally, Agent Simonello noted that he found various "versions" of the aforementioned videos which contained identical content, but with other various alterations. Agent Simonello specifically took two screen shots of different versions of one of the aforementioned videos. (*See* Exhibits 402, 402–S). One version contained an internet logo while the other had a website banner displayed prominently across the middle. (*Id.*; *Id.*). Finally, Agent Simonello found various software that was designed to manipulate audio and video files on Defendant's Acer Laptop. When reviewing the aforementioned evidence, as well as the entire record, in a light most favorable to the prosecution, the Court concludes that the record is sufficiently robust to allow a reasonable jury to conclude that Defendant Schaffer knew of, and placed, the sexually explicit material on his Acer Laptop and/or the Gigaware Hard Drive.

Crim. DE 83 at 4–5.

The jury found Schaffer guilty on all counts (Crim. DE 88 (jury verdict)), and in June 2018, Judge Linares sentenced Schaffer to 480 months of imprisonment (Crim. DE 98 (judgment); Crim. DE 102 (transcript of sentencing)). Schaffer appealed, arguing that the district court erred in denying (1) his motion to suppress images retrieved from his computer and external hard drive, and (2) his motion for a judgment of acquittal under Fed. R. Crim. P. 29(a). *Schaffer*, 777 F. App'x at 582. In June 2019, the Third Circuit affirmed. *Id.* at 584.

### B. The § 2255 Motion

Between July 2020 and March 2022, Schaffer sought, and I granted, numerous extensions of time to file his § 2255 motion. Crim. DE 110–15, 118–21. In June 2021, Schaffer filed his initial motion, arguing (1) his due process rights were violated when the Government lost the Acer laptop, denying him access to critical evidence against him (DE 1 at 5), and (2) the evidence on the production counts (counts 1 and 2) was insufficient to sustain the jury's verdict of guilt (*id.* at 10). In September 2021, the Government answered, arguing (1) Schaffer's motion must be dismissed because he repeats the same arguments he raised, and lost, on direct appeal (DE 5 at 1, 4); and (2) Schaffer's arguments are in any event baseless (*id.* at 1, 5–6).

Schaffer did not reply to the Government's answer. However, in November 2021, Schaffer wrote a letter to his counsel, a copy of which he sent to the Court, requesting the status of "the amended 2255 or response where we raise the other issues I wanted to raise in my first letter to you (i.e. the bios, breach of attorney-client privilege . . . as well as all the other issues)." DE 6 at 1. Schaffer further wrote:

> I had requested to see the 2255 before you filed it with the court but instead you sent it to me a week after filing. I asked for some of my case files and never got them. I even asked about the other issues and your response was to wait until the [Government] responds [and] then we can raise them. This is the reason I wanted to do this pro se, I never asked the judge for an attorney. As you know, a 2255 is

> supposed to include <u>ALL</u> issues a defendant wants to raise if he believes it has merit. Please get back to me on how we can remedy this.

DE 6 at 1 (emphasis in original).

In December 2021, I granted Schaffer additional time to reply to the Government's answer and ordered that Schaffer's reply include a certification from Schaffer and his counsel (1) stating whether all claims Schaffer wishes to have included in his motion have been included; and (2) clarifying whether he wishes to proceed by counsel or pro se. DE 7. By letter dated January 5, 2022, § 2255 counsel (1) sought to be relieved as Schaffer's counsel, and (2) provided the Court with a timeline and the substance of his communications with Schaffer regarding the issues he wished to raise in his § 2255 motion, including:

> On or about January 7, 2021 I was appointed to represent Mr. Schaffer who filed a [p]ro se petition pursuant to 28 U.S.C. §2255. I communicated with Mr. Schaffer who provided me a letter with a list of issues he wished to litigate in his §2255 petition. I also obtained the relevant portions of his file from his former attorney . . . .

> I reviewed Mr. Schaffer's correspondence to me regarding the issues he wished to raise on appeal. The petition I filed on his behalf subsumed, in two points, the issues that Mr. Schaffer wanted raised. One issue, relating to the jury instructions and the elements of the offense, was not raised. In a letter to Mr. Schaffer, sent on July 22, 2021, I detailed what the appropriate law was and the reasons that issue was not included in the petition. On September 27, 2021 I sent a copy of the Government's response brief to Mr. Schaffer. On November 17, 2021 I received correspondence from Mr. Schaffer, a copy of which was directed to the Court. In that correspondence he registered a variety of complaints. On December 10, 2021 the Court entered a Text Order (Dkt. 7) and on December 13, 2021 a copy of the Text Order was sent to Mr. Schaffer.

> On January 4, 202[2][4] I received another letter from Mr. Schaffer continuing to complain about my alleged failure to raise the issues he wanted raised in the original petition filed on his behalf. And, for the first time, requested that I amend the petition to include an ineffective assistance of counsel claim against his former attorney . . . . He provided a list of a variety of alleged deficiencies in [trial

---

[4] This letter here states "January 4, 2021"; it appears, however, that counsel intended to write "2022," since the letter summarized his communications with Schaffer in chronological order. DE 8.

counsel's] performance, none of which were ever raised in our prior
communications.

DE 8 at 1–2.

In a letter filed January 26, 2022, Schaffer responded, in relevant part:

On January 7, 2021, the . . . Court appointed [§ 2255 counsel] due to Government
argument that the files are too sensitive to send to me . . . . Mr. Schaffer has also
made several requests to [§ 2255 counsel] for files that are not deemed sensitive
but would help in pinpointing all issues that needed to be raised."

DE 9 at 1–2. In a letter filed February 9, 2022, Schaffer advised that Court that he is "still

looking to amend the 2255, but counsel is still hindering my requests for Government exhibits.

Also . . . , on January 22nd [§2255 counsel] sent me a letter requesting all issues I wanted to

claim. I sent a 3 page list to him outlining my claims . . . ." DE 10 at 1.

In March 2022, the Court granted the motion of counsel to withdraw (DE 14, 16), and

appointed new counsel to represent Schaffer (DE 15). The Court directed Schaffer to file his

submission seeking to add additional claims to his § 2255 motion by August 31, 2022. DE 23.

On that date, Schaffer filed a supplemental brief in support of his motion to vacate sentence,

arguing that "the fact that his trial counsel conceded[] that [Schaffer] took the images and even

participated in the inappropriate encounters with the victims[] amounts to ineffective assistance

of counsel." DE 24 at 1. In October 2022, a magistrate judge (1) deemed the original motion

amended "for good cause having been shown," and (2) ordered the Government to answer. DE

25.

In December 2022, the Government answered, arguing that Schaffer's ineffective

assistance of counsel claim is time-barred because (1) it was not brought withing the one-year

limitations period or included in the initial § 2255 motion and (2) it does not relate back to his

initial motion. DE 30 at 2. Further, "[s]hould the Court disagree with the Government's statute of

limitations argument," the Government seeks "leave to request an order declaring that Schaffer

has waived the attorney-client privilege so that the Government can conduct discovery into Schaffer's [ineffective assistance] claim, and to file a supplemental answer responding to [the claim] on the merits . . . ." DE 30 at 4 n.2.

Schaffer replied to the Government's answer in December 2022, asserting the following argument:

> Clearly there was equitable tolling here. Mainly because Mr. Schaffer and his prior attorney did not agree on the handling of this case. This motion was filed on time and the Defendant was granted, by this court, an equitable tolling of the statute of limitations so that he could proceed with his newly appointed counsel.

DE 33 at 2.

The motion to vacate is therefore fully submitted and ready for decision.

## II.   DISCUSSION

### A.  Legal Standards Applicable to § 2255 Motions

A prisoner in federal custody under sentence of a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon three grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; or (3) "that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

A criminal defendant bears the burden of establishing entitlement to § 2255 relief, *see United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005), and "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982); *see also United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) ("a motion pursuant to 28 U.S.C. § 2255 is reviewed much less favorably than a direct appeal[.]"). In considering a § 2255 motion, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545

(3d Cir. 2005) (internal quotation marks and citation omitted). Pro se habeas petitions are liberally construed. *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010) (citation omitted). The Court may deny the motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11-4646, 2013 WL 4538293, at \*9 (D.N.J. Aug. 26, 2013) (citing *Booth*, 432 F.3d at 545–46).

### B.  Schaffer Cannot Relitigate Claims Premised on the Lost Laptop

Schaffer contends that his due process rights were violated when the Government lost the Acer laptop, denying him access to critical evidence against him. DE 1 at 5. He asserts that information obtained from an examination of "the actual laptop, including its metadata," "was essential to Schaffer's defense, because . . . the Government was required to prove that it was actually Schaffer who transferred the images to the laptop." DE 1 at 6–7.[5] He contends that "[b]ecause it is unknown if this information was altered when the Government copied it and there was no other means of cross examining the Government witnesses on this essential issue, [his] due process rights were violated when the laptop was inexplicably lost."  DE 1 at 7.

Schaffer further argues that even if the laptop is not deemed exculpatory on its face, it was "potentially exculpatory" because there were irregularities in the examination of the laptop and a cell phone that was seized from him. *Id.* at 8–9. He asserts that if the Court had not denied his request for a hearing, he could have (1) "cross examined Government agents regarding the

---

[5] Schaffer was charged under 18 U.S.C. § 2251(a). "Under § 2251(a), the Government must prove beyond a reasonable doubt that: '(1) the victim was less than 18 years old; (2) the defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and (3) the visual depiction was produced using materials that had been transported in interstate or foreign commerce.'" *United States v. Horton*, No. 12-228, 2021 WL 1217394, at \*6 (E.D. Pa. Mar. 26, 2021) (quoting *United States v. Broxmeyer*, 616 F.3d 120, 124 (2d Cir. 2010); cleaned up).

circumstances surrounding the disappearance of the computer to determine whether they acted in bad faith," and (2) "confronted the agents as to the irregularities of the search and examination of the laptop, which could have also helped to established the Government's bad faith in losing the laptop." *Id.* at 9–10.

Judge Linares rejected Schaffer's argument that his due process rights were violated by the loss of the laptop and denied Shaffer's motion to suppress the evidence. *Schaffer v. U.S.*, Crim No. 13-183, DE 40; *id.*, DE 51; *id.*, DE 76. The Third Circuit affirmed:

> Schaffer argues that the computer evidence should have been excluded because the government inexplicably lost his laptop, and that this loss was compounded by technical irregularities regarding the Government's forensic examination. He claims that the inability of Schaffer's expert to examine the laptop abridged Schaffer's Constitutional rights to due process of law, confrontation, and the opportunity to present a meaningful defense.

> We disagree. First, the computer evidence was preserved by an "exact copy," a forensic image prepared by a federal digital forensics expert before the expert's examination of the computer's contents. Second, even assuming that the forensic image did not afford Schaffer the equivalent level of information that the actual hard drive would have provided, Schaffer's due process claim still fails. Although loss or destruction of evidence may constitute a due process violation, a defendant who claims destroyed evidence might have proved exculpatory has to show the government's bad faith in ordering or permitting its destruction. Without a showing of bad faith, failure to preserve evidence that might be of use to a criminal defendant is not a denial of due process. To prove bad faith, there must be a showing that the Government intentionally acted to gain some tactical advantage over the defendant. We review for clear error the District Court's finding that the government did not act in bad faith.

> Schaffer fails to demonstrate that the government acted in bad faith. The unfortunate misplacement of Schaffer's laptop does not constitute an intentional act to gain a tactical advantage over Schaffer. Indeed, Schaffer himself told the District Court he "d[id] not question the veracity of the[ ] [government's sworn] statements" about the loss of the laptop, and that "it is clear that the government did not act in 'bad faith' when it lost the laptop."

> This concession by Schaffer is supported by the government's three sworn statements from the principal individuals who handled Schaffer's laptop between the time it was examined and his trial. Neither the agents who investigated Schaffer nor the Assistant U.S. Attorneys in New Jersey who prosecuted him had control over the laptop when it disappeared. There was no animus toward

> Schaffer. Furthermore, it was highly likely that all relevant evidence was
> preserved in the forensic images of the hard drive. The government gained no
> tactical advantage by losing a laptop that had no exculpatory value. The District
> Court therefore did not err in denying Schaffer's motion to suppress the computer
> evidence.

*Schaffer*, 777 F. App'x 581, 582–83 (cleaned up).

The arguments Schaffer raises now are materially identical to the arguments the trial judge and Third Circuit already considered and rejected. As a general rule, re-litigation of a claim considered on direct appeal is barred unless (1) there is newly discovered evidence that could not reasonably have been presented at the original trial; (2) there is a change in applicable law; (3) counsel provided ineffective assistance; or (4) other circumstances indicate that the accused did not receive full and fair consideration of his federal constitutional and statutory claims. *See United States v. Palumbo,* 608 F.2d 529, 533 (3d Cir. 1979); *United States v. DeRewal,* 10 F.3d 100, 105 n. 4 (3d Cir. 1993). None of the *Palumbo* factors is present here. Schaffer puts forth no change in the law or new facts that would justify relitigating this claim.

Accordingly, as consideration of the lost laptop claim would require this Court to revisit a claim that has already been decided by a higher court, it is not cognizable. *See United States v. Braddy*, 837 F. App'x 112, 115 (3d Cir. 2020) ("[a] § 2255 motion does not function as a second appeal"); *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993); *Sonneberg v. United States*, No. 01-2067, 2003 WL 1798982 (3d Cir. Apr. 4, 2003) ("It is well settled that a petitioner generally may not relitigate issues that were decided adversely to him on direct appeal by means of a Section 2255 petition."); *Jackson v. United States*, No. 11-3392, 2011 WL 4343690, at *3 (D.N.J. Sept. 14, 2011) ("A section 2255 motion is not a substitute for appeal, nor may it be used to relitigate matters decided adversely on appeal."). Habeas relief on this claim will therefore be denied.

### C.  Schaffer Also Cannot Relitigate His Claim Premised on Sufficiency of Evidence

Schaffer argues that the evidence on the production counts was insufficient to sustain the

jury's guilty verdict. DE 1 at 5. Specifically, he contends that there was insufficient evidence to

satisfy the third element of the production statute because there was no evidence that he

personally transferred images from a recording device to the computer or hard drive:

> [T]he Government relied on the theory that the visual depictions were produced or
> transmitted using materials that had been mailed, shipped or transported across
> state lines or in foreign commerce. Because the camera/recording device used to
> create the images was never found, the Government argued that Schaffer was
> guilty because the depictions were found on the Acer Laptop, which was made in
> China, and the Gigaware hard drive, which was made in Thailand. However, the
> jury was presented with no evidence which would allow it to reasonably conclude
> that Schaffer was the person who transmitted the images to the Acer Laptop.
>
> . . . While Schaffer conceded that he took the images and even participated in the
> inappropriate encounters with the victims, there was no evidence that it was
> Schaffer who placed the images on these devices. . . .
>
> [N]one of [the facts relied upon by the Government] support the inference that
> Schaffer was responsible for actually transferring the images to the Acer Laptop
> or Gigaware Hard Drive. The Government offered no evidence that Schaffer had
> exclusive control over the laptop, which was manufactured in 2011, two years
> after the recording of the images. HSI Agent Jeffrey Knopf conceded that the
> Government had no idea who had access to the laptop before it was seized. In
> addition, there was no indication that the laptop was password protected.

DE 1 at 11–12 (citations omitted)

Judge Linares rejected this argument in denying Schaffer's motion for a judgment of

acquittal. Crim. DE 83 at 1. The Third Circuit affirmed:

> Schaffer next contends that the District Court erred by denying his motion for a
> judgment of acquittal related to the production charges because there was no
> evidence he transferred images from a recording device to the computer or hard
> drive. We exercise plenary review over an appeal for a grant of a judgment of
> acquittal. The dispositive question for any claim regarding the sufficiency of the
> evidence is whether, after viewing the evidence in the light most favorable to the
> prosecution, *any* rational trier of fact could have found the essential elements of
> the crime beyond a reasonable doubt.

When ruling on the motion, the District Court identified five pieces of evidence that the government could present to lead a reasonable jury to conclude Schaffer created the videos and images and then placed them on his laptop and hard drive. That evidence was that (1) the sexually explicit videos of his victims were found on Schaffer's laptop, (2) Schaffer's laptop contained copies of the sexually explicit videos of one of his victims that also existed on Schaffer's desktop computer, (3) the sexually explicit photographs that Schaffer took of one of his victims were found on Schaffer's laptop, (4) Schaffer's hard drive contained the sexually explicit videos of his victims, along with the sexually explicit photographs of one of his victims, and (5) a federal investigator testified that the sexually explicit videos of both victims, along with the sexually explicit photographs of one victim, among other files, were backed up from Schaffer's laptop to Schaffer's hard drive in May 2012, before investigators seized the laptop and desktop.

Schaffer concedes that he took the images and participated in the inappropriate encounters with his victims but argues that the evidence detailed by the trial court did not provide any direct link to suggest that he himself transferred recorded images to the laptop or the external hard drive.

Schaffer's argument that circumstantial evidence cannot prove his guilt is unpersuasive. The government can meet its burden of proof by presenting circumstantial evidence as long as inferences drawn from that evidence bear a logical or convincing connection to established fact. The government has done so here. Schaffer had exclusive control over the computer evidence. That computer evidence contained child pornography created by Schaffer. The jury could reasonably have inferred that Schaffer loaded the pornographic images of his victims onto his laptop and hard drive. We therefore reject Schaffer's claim.

*Schaffer*, 777 F. App'x at 583–84 (cleaned up; emphasis in original).

Again, the arguments Schaffer raises in support of the insufficient evidence claim in his

§ 2255 motion are substantially the same arguments he raised before the trial court in his motion

for judgment of acquittal and on direct appeal. Crim. DE 83 at 1. As this claim has already been

decided by the Third Circuit on direct review, and Schaffer has not come forward with new facts

or law justifying its reconsideration now, the claim is not cognizable on habeas review and,

therefore, relief will be denied. *See Braddy*, 837 F. App'x at 115; *DeRewal*, 10 F.3d at 105 n.4.

### D.  Schaffer's Counsel Was Not Ineffective

Schaffer argues that his counsel's concession that Schaffer took the images and "participated in the inappropriate encounters with the victims" amounted to ineffective assistance of counsel. DE 24 at 1. Specifically, he claims (1) "this admission by counsel to his guilt with a sexual encounter with the alleged victims . . . was so serious that it deprived him of a fair trial and led to an unreliable jury verdict" (*id.* at 1–2); and (2) Schaffer "did not consent to this admission of his guilt as to the two victims and the alleged sexual activity with them" (*id.* at 2). Schaffer asserts that the admissions by counsel "amounted to prejudice to the defense and it shows that there is a reasonable probability that the result of the proceeding would have been different had that admission not been made." *Id*. He also contends that the admission "was a big picture objective/fundamental decision belonging to him alone," and his "choice was not honored." The Government does not respond on the merits and argues instead that the claim is untimely. *Id.* at 4. I need not determine whether the claim is timely, however, because, for the reasons below, it lacks merit.[6]

Schaffer's argument, in essence, is that it should have been his decision, not his lawyer's, as to whether to concede (a) that he was the person who recorded the sexual abuse of the two

---

[6] If the assertions of Schaffer's counsel are to be credited, this claim is likely untimely. Schaffer filed his § 2255 motion on June 21, 2021. As noted above, by letter dated January 5, 2022, Schaffer's initial § 2255 counsel advised the Court that he had received a letter from Schaffer on January 4, 2022, in which Schaffer requested "for the first time" that he "amend the petition to include an ineffective assistance of counsel claim against his former attorney," and that Schaffer "provided a list of a variety of alleged deficiencies in [trial counsel's] performance, none of which were ever raised in [Schaffer and § 2255 counsel's] prior communications." DE 8 at 1–2.  If this information is correct—and Schaffer has not contested its accuracy—Schaffer's ineffective assistance claim was untimely, because (1) Schaffer apparently never requested that his counsel file an ineffective assistance claim in the initial motion—which was only timely because the Court equitably tolled the time between the expiration of the one-year limitations period and the filing of the initial motion (*see* Crim. DE 111, 114, 119, 121)—and (2) the claim was filed after the limitations period and equitably tolled time expired on June 21, 2021. DE 24 (supplemental brief containing ineffective assistance claim filed August 31, 2022).

minor victims, and (b) that he was the person seen on the video committing the sexual abuse of two minor victims. Further, Schaffer argues, this decision was so fundamental that denying him the opportunity to decide for himself was structural error, such that he need not show prejudice.

In *United States v. Wilson*, 960 F.3d 136 (3d Cir. 2020), the Third Circuit distinguished counsel's tactical decisions from a defendant's right to autonomy:

> When a criminal defendant challenges his counsel's tactical choices, we usually analyze that challenge under the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). But when a defendant is deprived of counsel entirely, the error is structural and the defendant gets a new trial. *See Gideon v. Wainwright*, 372 U.S. 335, 340–42 (1963). Likewise, when a defendant insists on representing himself, denying his right to do so is structural. *McKaskle v. Wiggins*, 465 U.S. 168, 177–78 & n.8 (1984). So too is denying a defendant the right to retain counsel of his choice. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006). Thus, "[t]he Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Faretta v. California*, 422 U.S. 806, 819 (1975).

> The Sixth Amendment respects a defendant's right to counsel and right to autonomy by dividing ultimate decisionmaking authority between lawyer and defendant. Lawyers control tactics, while defendants get to set big-picture objectives. For tactical decisions, like which arguments to press and what objections to raise, the lawyer calls the shots. *See Gonzalez v. United States*, 553 U.S. 242, 248–49 (2008) (citing *New York v. Hill*, 528 U.S. 110, 114–15 (2000)). But fundamental decisions belong to the defendant alone: whether to plead guilty, waive a jury trial, testify, or appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

> . . . [I]n *McCoy v. Louisiana*, the Supreme Court clarified the line between tactical and fundamental decisions. *See* 138 S. Ct. 1500, 1507–08 (2018). On the one hand, "strategic choices about how best to *achieve* a client's objectives" are decisions for lawyers, so we review them for ineffectiveness. *Id.* at 1508. On the

---

The ineffective assistance claim also does not "relate back." Under the relation-back doctrine, a claim may be considered timely if it is tied to a common core of operative facts laid out in the original filing. Schaffer cannot make this showing here. His initial motion contained only the lost laptop and insufficient evidence claims addressed above; neither claim focused on his attorney's performance. Thus, Schaffer cannot benefit from the relation-back doctrine. *See Bernard v. United States*, No. CV 18-15996 (JMV), 2019 WL 3719405, at *2 (D.N.J. Aug. 5, 2019) ("Fair notice is . . . the touchstone for determining whether claims relate back, and a claim will not relate back where his original pleading did not give fair notice of the legal theory to be relied upon.").

other hand, "choices about what the client's objectives in fact *are*" belong to
defendants themselves, and violating a defendant's right to make those choices is
structural error. *Id.*

*Wilson*, 960 F.3d at 143 (emphasis in original).

*McCoy* was a capital case in which defense counsel conceded factual guilt—i.e., that his
client had committed the three murders in question—in accordance with counsel's objective of
obtaining a life sentence for his client rather than the death penalty; he did so despite his client's
goal of obtaining an acquittal despite the overwhelming evidence. *See McCoy*, 138 S. Ct. at
1506–07. The Supreme Court held "that a defendant has the right to insist that counsel refrain
from admitting guilt, even when counsel's [experience-based] view is that confessing guilt offers
the defendant the best chance to avoid the death penalty." *Id.* at 1505 (footnote omitted) ("[I]t is
the defendant's prerogative, not counsel's, to decide on the objective of his defense: to admit
guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence, leaving it
to the State to prove his guilt beyond a reasonable doubt.").

*McCoy* may be limited to death penalty cases, *see id.* at 1514 (Alito, J., dissenting) ("the
right that the Court has discovered is effectively confined to capital cases"). But even if it is not
so limited, there is another fundamental distinction between *McCoy* and this case. In *McCoy*,
counsel conceded his client's guilt of the charged crime. *Id.* at 1509 (counsel "must abide by [his
client's] objective and may not override it by conceding guilt"). Here, by contrast, Schaffer's
counsel conceded certain *elements* of the charged crime while nonetheless maintaining
Schaffer's innocence because, he argued, the Government had not met its burden as to other
elements. In short, this was a tactical decision as to the best *manner* of contesting guilt.

As the Second Circuit noted in *United States v. Rosemond*, 958 F.3d 111 (2d Cir. 2020):

Throughout its opinion, the *McCoy* Court's use of the word "guilt" is explicitly
limited to the charged crime. 138 S. Ct. at 1505 (stating that McCoy "vociferously
insisted that he did not engage in the *charged* acts and adamantly objected to any

17

admission of guilt" (emphasis added)); *id.* at 1509 ("When a client expressly asserts that the objective of '*his* defence' is to maintain innocence of *the charged criminal acts*, his lawyer must abide by that objective and may not override it by conceding guilt." (second emphasis added)); *id.* at 1510 ("[C]ounsel may not admit her client's guilt *of a charged crime* over the client's intransigent objection to that admission." (emphasis added)). The dissent understood the majority's opinion to be so limited, too. When explaining its understanding of "[t]he constitutional right that the Court has now discovered," it noted: "a criminal defendant's right to insist that his attorney contest his guilt with respect to all *charged offenses.*" *Id.* at 1514 (Alito, J., dissenting) (emphasis added).

The majority repeatedly made clear that its decision was meant to safeguard the "objective of [one's] defense," *see id.* at 1505, 1508–10, 1512, plainly stating that "it is the defendant's prerogative, not counsel's, to decide on the objective of his defense," *id.* at 1505.

*Rosemond*, 958 F.3d at 122 (emphasis in original).

Thus, the Second Circuit concluded "that the right to autonomy is not implicated when defense counsel concedes one element of the charged crime while maintaining that the defendant is not guilty as charged." *Id.* The court elaborated:

Conceding an element of a crime while contesting the other elements falls within the ambit of trial strategy. The majority in *McCoy*, in fact, acknowledged as much. 138 S. Ct. at 1510 (noting that the case did not deal with "strategic disputes about whether to concede an element of a charged offense" but were instead "intractable disagreements about the fundamental objective of the defendant's representation"). Thus, when a lawyer makes strategic concessions in pursuit of an acquittal, there is no *McCoy* violation assuming, of course, the defendant's objective was to maintain his non-guilt (as opposed to, *e.g.*, pleading guilty in return for a lighter sentence).

. . .

Here, Rosemond and Touger shared the same goal: acquittal. In pursuit of that goal, Touger never conceded that Rosemond was guilty of the charged crimes; instead, Touger merely conceded one element as part of his strategy to argue that the government had failed to meet its burden to prove Rosemond intended for Fletcher to be killed, a necessary element to convict on a murder-for-hire charge. This was trial strategy, and Touger made the limited concession while zealously defending Rosemond's innocence. . . . This is far different from *McCoy*, where the attorney immediately conceded that his client was guilty of the charged crime, 138 S. Ct. at 1506, and never explored arguments that could have led to acquittal. A lawyer's decision to make strategic concessions while maintaining that his

18

client is not guilty of the charged crime does not violate a defendant's right to autonomy.

*Rosemond*, 958 F.3d at 122–23 (citations omitted).

Likewise, in this Circuit, the *Wilson* panel held that "[e]ven if a lawyer stipulates to a crime's jurisdictional element without getting his client's consent or over his client's objection, that stipulation does not per se violate a criminal defendant's Sixth Amendment right to counsel." 960 F.3d at 142 (explaining that *McCoy* distinguished counsel's concession of factual guilt over defendant's objection from counsel's strategic decision to concede an element of a charged offense, and finding that only the former amounts to a structural error); *see also United States v. Brewer*, No. 21-3297, 2022 WL 15378220, at *1 (3d Cir. Apr. 6, 2022) (denying certificate of appealability where "as part of appellant's claim that his trial counsel should not have conceded the interstate-commerce element of Hobbs Act robbery, appellant argued that the concession violated the rule of *McCoy*" because, *inter alia*, "conceding that element was not tantamount to a concession of guilt of the offense, which counsel otherwise contested."), *cert. denied*, 143 S. Ct. 470 (2022).

Other courts interpreting *McCoy* have also held that an attorney may, as a strategic decision, effectuate a client's objective of acquittal by conceding certain elements of a crime, while still contesting others. *See, e.g.*, *Pizzaro v. United States*, No. 16-54, 2023 WL 2346497, at *12 (S.D.N.Y. Mar. 3, 2023) ("Mr. Pizzaro's contention that his trial counsel was ineffective because they 'conceded guilt by contradicting client's assertions of innocence' confuses conceding an element of a crime with conceding guilt of a crime. As a strategic choice, a lawyer may concede an element of the charged crime.") (citations omitted); *United States v. Chambers*, No. 13-20254, 2020 WL 2526116, at *14 (E.D. Mich. May 18, 2020) ("Petitioner cites no case suggesting *McCoy* may be implicated where counsel for defendant in a non-capital case

concedes an element of a crime. And courts have held otherwise."); *Christensen v. United States*, No. 14-08164, 2020 WL 1672771, at *5 (D. Ariz. Apr. 6, 2020) ("Christensen cites no case suggesting *McCoy* may be implicated where counsel for a defendant in a non-capital case concedes an element of a crime. Courts uniformly hold to the contrary.") (collecting cases); *Crump v. Halvorson*, No. 18-1334, 2019 WL 3431787, at *8 (D. Minn. June 10, 2019) ("Crump has cited no case suggesting *McCoy* may be implicated where counsel for a defendant in a non-capital case concedes an element of a crime . . . ."), *report and recommendation adopted*, 2019 WL 3429848 (D. Minn. July 30, 2019); *Burris v. Dalbalso*, No. 17-2161, 2018 WL 4899407, at *3 (E.D. Pa. Oct. 9, 2018) ("Mr. Burris argues his trial counsel '[tacitly] admitted' his guilt by stipulating the sperm found inside the victim was Mr. Burris's. Mr. Burris bases his argument on the Supreme Court's decision in *McCoy* . . . . Mr. Burris misplaces reliance on *McCoy* for several reasons. . . . [M]ost fundamentally, Mr. Burris *did* maintain his innocence by presenting a consent defense.") (emphasis in original).

Here, counsel conceded certain elements: specifically, that Schaffer took the videos and images and sexually abused the victims. In his closing argument, counsel told the jury:

> When I opened up on Tuesday, I believe it was, I told you that I have the unique experience as a defense attorney of telling a jury that I represent somebody that is not innocent, and I maintain that because you saw those videos, and it is pretty evident that it was my client. I am not going to stand here and tell you it wasn't Mr. Schaffer in those videos, and I am not going to stand here and tell you that he is innocent of committing some State crime. But what I did tell you, and you agreed that you would abide by the instructions of the Judge, I told you that Mr. Schaffer is innocent of the federal charges that he is charged with, and you have to put aside that gut visceral reaction that you saw these videos, and they might have been disturbing to many of you, but that doesn't in and of itself prove that Mr. Schaffer is guilty of the crime that he is charged with here.

> These are federal crimes. They are not State crimes. This is not a Brooklyn court. This is the New Jersey District Court in Newark, New Jersey, and he is charged with three separate crimes. I am going to—three separate counts, two separate crimes, but three counts, and I am going to focus mostly on the production of child pornography.

> Typically in a defense in a criminal action, there are only a few types of defenses. The first one is: It wasn't me.
>
> You know, it was somebody else that did it. That is clearly not the case here.
>
> The second type of defense might be: The cops are lying.
>
> That is certainly not the case here.
>
> Every officer here that testified that you heard was credible. Every witness that you heard testify was credible. The defense in this case is, and it's just as important a defense, is the Government didn't prove their case.
>
> Now, a lot of people might say, a lay person might say, Oh, you got your client off on a technicality.
>
> Well, let me tell you something. In my opinion, the United States Constitution is not a technicality because our Constitution says you have to prove—the Government has to prove not just two of the elements in a crime, they have to prove every single element.
>
> And you know, I commend Ms. Williams for her summation. She did a good job summarizing the facts.
>
> And you know what? I agree with 99 percent of what she said. There's a lot of facts out there, but the defense here boils down to a very small piece of evidence, and that has to do with the third element of production of child pornography. That has to do with the interstate commerce clause. Did they prove that Mr. Schaffer was the one that copied the images that you saw onto the hard drive and/or onto the external hard drive?

*United States v. Schaffer*, Crim. No. 13-183, DE 93 at 65–67.

Counsel then reviewed the circumstantial evidence related to the interstate nexus element and argued that the evidence did not support a finding that Schaffer transferred the videos and images to the laptop or external hard drive. *Id.* at 67–75. Counsel then concluded:

> So while this case may have caused you some disturbance in looking at some of those videos, I want you to be like surgeons in this case and try to keep the guts and the graphic images out of the equation and look at facts. They all boil down to that one point.
>
> Did the Government in this case prove beyond a reasonable doubt with the facts that they presented, that Mr. Schaffer was the one that copied those images from the unknown source onto the Acer hard drive and onto the external hard drive?

My submission to you is the answer to that is no.

*Id.* at 75.

Counsel thus conceded the elements of the production charge for which there was overwhelming testimonial photographic evidence, but focused his attack on a more vulnerable element equally essential to a finding of guilt. Counsel chose this strategy as the best means of maintaining Schaffer's innocence as to the production of child pornography charges. Accordingly, counsel's decision was a tactical one that must be analyzed under the two-pronged test of *Strickland*. *See Burton v. May*, No. 19-1475, 2022 WL 15443680, at *9–10 (D. Del. Oct. 27, 2022) (Where defense counsel stipulated to certain elements of the charged offenses, but "never admitted that Petitioner was guilty of the charged offenses," "[p]etitioner's case is not one of structural error under *McCoy*, where defense counsel refuses to defer to his client's explicit assertion that he wishes to argue his innocence, but rather, a case where defense counsel's decision to stipulate to the State's evidence should be assessed under *Strickland*.").

Under the first prong of *Strickland*, Schaffer must show that his counsel's representation "fell below an objective standard of reasonableness." 466 U.S. at 688. A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"; thus, the court's scrutiny of counsel's performance "must be highly deferential." *Id.* at 689. Under the second prong, he "must show that the deficient performance prejudiced the defense," (*id.* at 687), by demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*id.* at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Both prongs must be established for a valid claim; however, "[a] court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Strickland*, 466 U.S. at 668.

Here, counsel's concession that Schaffer "took the images and . . . participated in the inappropriate encounters with the victims," DE 24 at 1, was reasonable given the overwhelming evidence of Schaffer's participation in that conduct. The victims, Schaffer's niece and her friend, were indisputably 12 and 14 years old at the time of the abuse. They identified Schaffer and testified about what he did to them. And—though the victims' testimony alone was damning enough—that testimony was bolstered by images and video recordings of Schaffer himself engaging in the sexual abuse that the victims described. Indeed, in denying Schaffer's motion for acquittal, Judge Linares emphasized that "the Court's own review of the admitted evidence *unequivocally shows* Defendant appearing with the two victims and engaging in sexually illicit conduct. . . . Defendant can be seen looking directly at the camera and adjusting same." Crim. DE 83 at 4–5 (emphasis added) (also noting that "[o]n these videos, Defendant can also be heard speaking to the victim discussing a 'modeling agency' and how the victim would be photographed."); *see also* Crim. DE 92 at 143–62 (Allison testified about her birth date, including that she was "about 12" during the relevant time; that Schaffer is her uncle; that Schaffer is the individual who sexually abused her and is in the images with her; that the tattoo in the photographs is Schaffer's; that there was no one else in the room during the abuse; and about the details of the abuse); *id.* at 163–70 (Ashley testified about her birth date, including that she was 14 and in eighth grade during the relevant time; how she met Schaffer; how Schaffer sexually abused her; that she complied with the abuse because she was scared; that Schaffer took sexually explicit photographs of her; that she was alone in the room with Schaffer when he took the photographs; that Schaffer is the individual in certain images with her).

23

On this record, I cannot find that counsel's performance was deficient. To the contrary, in the face of overwhelming—practically irrefutable—evidence that Schaffer sexually abused the minor victims, conceding this conduct arguably strengthened counsel's credibility with the jury while focusing on the only element of the crime—transferring the recordings to the laptop—that the victims did not witness and that was not captured on video. In short, unlike in *McCoy*, Schaffer and counsel were not at cross purposes. They shared the common goal of acquittal, and counsel made reasonable strategic concessions in pursuit of that shared goal. This type of tactical decision, even if ultimately unsuccessful,[7] is entitled to a presumption of reasonableness. *See Strickland*, 466 U.S. at 689; *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989) ("the range of reasonable professional judgments is wide and courts must take care to avoid illegitimate second-guessing of counsel's strategic decisions from the superior vantage point of hindsight"); *United States v. Simone*, 931 F.2d 1186, 1196 (7th Cir. 1991) ("[W]hen the admissions concern only some of the charges to be proven, or when they do not actually concede guilt, counsel's concessions have been treated as tactical retreats and deemed to be effective assistance.").

Even if counsel's performance were deficient, Schaffer would not be entitled to relief because he has not established prejudice. *See Strickland*, 466 U.S. at 694. Given the overwhelming evidence that Schaffer is guilty of the crimes charged—including the videos and images of Schaffer sexually abusing the minor victims and the victims' testimony about the abuse—he has not established that the outcome would have been different but for counsel's

---

[7] *See, e.g.*, *Lewis v. Mazurkiewicz*, 915 F.2d 106, 115 (3d Cir. 1990) ("[W]hether or not some other strategy would have ultimately proved more successful, counsel's advice was reasonable and must therefore be sustained."); *Pizzaro v. United States*, No. 16-54, 2023 WL 2346497, at *13 (S.D.N.Y. Mar. 3, 2023) ("That trial counsel's strategic maneuver did not win the day does not give rise to an ineffective assistance of counsel claim."); *see id.* at *12 ("Conceding an element of a crime is also reasonable when there is overwhelming evidence of guilt.").

concession. *See*, *e.g.*, *United States v. Holmes*, 409 F. App'x 545, 548 n.3 (3d Cir. 2010) ("Though it might be thought that an attorney's concession of his defendant-client's guilt necessarily is prejudicial, that might not be so in a case in which the evidence against the defendant was so overwhelming that even without the concession the defendant had no chance of obtaining a not guilty verdict."); *Thompson v. United States*, 826 F. App'x 721, 727–28 (11th Cir. 2020) (where counsel denied only one element of the charged Hobbs Act robbery, but was wrong about the facts required to prove the element, there was no ineffective assistance of counsel because "a mound of evidence supported Thompson's involvement in the . . . robbery— including pictures and videotape" and therefore, prejudice was not established); *Harris v. United States*, No. 13-58, 2022 WL 1136951, at *2 (W.D. Pa. Apr. 18, 2022) ("Petitioner claims that trial counsel conceded Petitioner's guilt, but she did not. Trial counsel advocated vigorously for Petitioner, and in so doing, made a strategic decision to concede to an element of the offense Petitioner was charged with, not his guilt to the charge against him. The record shows trial counsel conceded there was evidence Petitioner distributed heroin. There was no prejudice because there was sufficient evidence at trial that he distributed heroin.") (citations omitted). Accordingly, habeas relief on this claim will be denied.

## III.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Here, reasonable jurists would not find the Court's habeas ruling debatable. Accordingly, no certificate of appealability shall issue.

## IV.    CONCLUSION

For the foregoing reasons, Schaffer's habeas petition is denied and no certificate of appealability shall issue.  An appropriate order follows.

DATED:  May 1, 2023

/s/ Kevin McNulty
_____
        KEVIN MCNULTY
        United States District Judge